### REMINDER LOCK CO. et al. v. ADLER et al.

(Circuit Court, S. D. New York. December 23, 1895.)

PATENTS—CONSTRUCTION OF CLAIMS—VALVE LOCKS.

The Stiner patent, No. 413,794, for an improvement in valve locks, whereby the performance of one act (such as turning off the water in a building at night) is insured by making it impossible to perform another act (such as locking the front door of the building) until the water is turned off, covers an invention sufficiently meritorious to warrant a liberal construction of the claims, and the application of the doctrine of equivalents. *Held*, therefore, that the patent was infringed by a mechanism which, though different in appearance, was composed of parts which, in function and operation, were the counterparts of the elements of the first claim.

This was a bill in equity by the Reminder Lock Company and others against Marcus Adler and others for infringement of a patent relating to valve locks.

This is an equity suit for infringement of letters patent No. 413,794, granted to Clarence M. Stiner, October 29, 1889, for improvements in valve locks. The patent is now owned by the complainants. Stiner's idea was to insure the performance of one act, such as turning off the water in a building at night, by making it impossible to perform another act, such as locking the front door of the building, until the water has been turned off. To illustrate: The porter, on unlocking the door in the morning, finds the water turned off. There is but one way for him to get water. He must take the key which unlocked the door and with it unlock the water valve. The moment he does this the key becomes caught in the valve lock or "trapped." The key can only be released by closing and locking the water valve. In other words, the porter cannot lock the door at night until he has shut off the water. The specification says:

"The device used consists of a key which fits two different locks. One of the locks is arranged so that when not in use as a seal it may be carried about or removed from its normal position, and its construction is such that it cannot be thus removed without first inserting the key and turning it. This act locks the key within the lock, so that when the lock is removed the key cannot be used in another lock until it has been released. To release the key necessitates the replacement of the lock and the throwing of the bolt. This having been accomplished the key may be removed from the lock and used on the second lock."

The patentee describes the device shown in the drawings, prefacing it, however, with the statement that it is one of many which may be used in practicing the invention. He says:

"I therefore do not confine myself to the particular form of lock nor to the particular manner of handling it. The central idea is to enforce the performance of an act or duty by rendering the performance of another act or duty dependent upon the performance of the first act. The form of lock here shown it is obvious may not be adhered to. I may use a 'Yale' lock and key or any other form of lock wherein it is impossible to withdraw the key except it be turned to a certain point. It is obvious also, as before stated, that the invention may be used in many instances, among which may be mentioned in couples a front and back door, any two doors, a stable-door and a house-door, a safe or vault and main door of a bank, and many other instances which it is not necessary to mention herein."

The claims involved are the first and fourth. They are as follows:

"(1) In combination with a lock-holder, a lock which may be embraced by the said holder, but which is removable therefrom, a keeper, and a key adapted to operate said lock to lock the keeper, holder, and lock together, for the purpose described."

"(4) A lock, in combination with a lock-holder which embraces the lock, said holder being provided with an opening, and a keeper adapted to pass through or into said opening to become engaged with the lock."

The defense is that the claims must be narrowly construed and, so construed, are not infringed.

Alfred Ely, for complainants.

Louis C. Raegener, for defendants.

COXE, District Judge (after stating the facts). The idea of enforcing one act by making the performance of another act dependent thereon was not new with Stiner. The mechanism by which he carries out the idea is new with him. It was old to trap keys and to

attach reminders to keys. The patent to Weil shows an electric apparatus designed to accomplish substantially the same object as Stiner's, but operating in a totally different way. The electric circuit which operates the cut-off valve is set in motion by putting a weight on a lever or taking it off. This weight may be a key, but it may be anything else as well. The porter if he desires to do so can hang a nail on the lever and carry the front door key in his pocket continuously. It is obvious that the patented device is simpler, cheaper and more effective than the Weil apparatus. The same may be said of the crude and ineffective Hellenberg structure. These are the best references offered by the defendants, and Stiner is many steps in advance of both. They make the performance of the desired duty optional; he makes it compulsory. It is the difference between a request and an order. The use of Stiner's mechanism insures obedience; none of the prior devices does this. A porter using his lock is compelled to shut off the water before he can lock up for the night. There is no alternative except to pick the lock. Of course the object of the invention is to prevent carelessness, not crime. A corrupt porter could, of course, circumvent all of these devices, but as a safeguard against forgetfulness and negligence Stiner's lock is without doubt the best yet devised.

Another feature of the Stiner invention not found in prior structures is the locking shut of the water valve at night. Before the porter can release the key he must not only turn off the water, but he must lock the valve in the closed position so that no water can get into the building either by accident or design. It is clear, then, that Stiner has made a valuable invention possessing elements of excellence not hinted at in the prior art. His is not a pioneer patent in the sense that he was the first to enter this field, but it is sufficiently meritorious to warrant a liberal construction of the claims; a construction broad enough to enable the complainants to restrain those who accomplish the identical result by similar or equivalent means.

Claim 1 has the following elements in combination: (1) A lockholder. (2) A lock which may be embraced by the said holder but which is removable therefrom. (3) A keeper or hasp. (4) A key. The use by the defendants of the lock-holder and key is undisputed. There is also a lock which may be embraced by and can be removed from the holder and there is a rigid metal attachment to the valve handle which swings with it into engagement with the holder and when locked in this position effectually prevents the use of water in the building. The defendants' brief concedes that the inventor is entitled to "any fair equivalents of the means invented by him coming within the essence and gist of the invention." It is thought that this attachment is such an equivalent and that in using it the defendants have appropriated "the essence" of the invention. That these parts accomplish the same result as the complainants' device is admitted, but, it is said, that they do it by different means. In a limited sense this is true, but, as before stated, the patent is not restricted to the exact details shown and described. The defendants' mechanism,

though it has a different appearance to the eye, will be found on analysis to contain parts, which in function and operation, are the counterparts of the elements covered by the first claim. There is a movable lock, a lock-holder, a key and a part attached to the valve which engages with the holder. The parts are locked together and the key "trapped" precisely as in the Stiner device. The spirit is the same, the letter is different. The principal controversy arises over the alleged missing element, the "keeper," in the defendants' device. There is little difficulty on this point unless the patent is destroyed by an exceedingly narrow construction. That the defendants use a "keeper" is self-evident. It is admitted that their valve handle is kept. The part which keeps the valve handle is the "keeper." Its size, shape and distance from the valve are immaterial. It does not cease to be the "keeper" because the lock or a part thereof is attached to it.

It follows that claim 4 is also infringed for the defendants' holder is provided with an opening into which the keeper passes to become engaged with the lock.

The complainants are entitled to the usual decree.